**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**PRECIOUS GROOVER-BREWSTER
o/b/o CASHONA BREWSTER,**

    **Plaintiff,**

**v.**                                                                               **Case No. 8:06-cv-1448-T-26TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                          /

## REPORT AND RECOMMENDATION[2]

The Plaintiff seeks judicial review of the denial of her daughter's claim for Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

The Claimant, Cashona Brewer, was twelve years of age and in the seventh grade at the time of the most recent administrative hearing. She stood approximately 5' 5" and

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

weighed 232 pounds.  *See* (R. 311).  Plaintiff, Precious Groover-Brewster, applied for Supplemental Security Income payments on behalf of her daughter in August 2002, alleging disability as of August 7, 1998, by reason of different length legs, scoliosis, an irregular heartbeat, weight problems, and pain in the back and legs.  The application was denied originally and on reconsideration.  A hearing before an Administrative Law Judge ("ALJ") was conducted on April 13, 2004.[3]  By order dated April 22, 2005, the ALJ determined that the Claimant's scoliosis did not constitute a severe impairment and thus she was not disabled.  Plaintiff appealed.  By order dated August 18, 2005, the Appeals Council vacated the ALJ's decision and remanded the case for further development based on new evidence.

A second administrative hearing was conducted on January 10, 2006.  The Claimant was represented by counsel and testified in her own behalf.  The Plaintiff also testified, as did Mary Groover, the Claimant's grandmother.

The Claimant testified that she was in the seventh grade and does well in school.  She no longer attends public schools and is home schooled two days a week and attends small classes three days a week.  Prior to changing schools, Claimant testified that she was always

---

[3]The Claimant was eleven years old and in the sixth grade at the time of this hearing.  She testified that she did well in school, reads in her spare time, and liked to draw.  No further testimony was elicited from the Claimant.  Plaintiff also testified.  By her account, Claimant's leg discrepancy became apparent at age three or four.  She testified that treatment thus far included a lift for Claimant's shoe and surgery was being scheduled in an attempt to correct the length discrepancy.  Plaintiff testified that Claimant is unable to participate in sports or join teams because her legs get weak and she falls.  She testified further that Claimant tires easily, has an obvious limp, and is self-conscious about her special shoes.  According to Plaintiff, the Claimant is unable to walk for long without resting because her leg gives out and she cannot climb stairs without holding on to a railing.  Claimant had gained approximately forty pounds in the last two years.  She has problems sleeping because she wakes up with spasms and cramps in her legs.  (R. 30-40).

late for class because she could not walk quick enough to eight different classes a day. Her school work suffered. She also missed about five months of school after her surgery, and even though a teacher was sent to the house a few hours a couple times a week, she could not keep up with the work on her own. Claimant used to participate in orchestra/chorus, but eventually she quit because she could not stand the forty-five minutes during performances. By her account, the other students teased her about her shoes having a lift on them and they called her names. Claimant did not participate in physical education when in public school and would have to sit out. She exercises now by doing sit-ups and jumping jacks, and she walks but not for long. Claimant was hoping to start swimming at the YMCA. Regarding her physical capabilities, Claimant estimated that she can walk for about five minutes before her back and legs start to hurt. Upon questioning by her attorney, Claimant indicated that she could not walk one block. She indicated further that she has crutches and a wheelchair, which she received after her surgery, but she does not want to use them. She has trouble going up stairs because her legs hurt. In her free time, Claimant emails friends and family and goes to the movies. She does not really go shopping at the mall because she cannot walk well. (R. 44-55).

The Plaintiff testified next. She testified that she took her daughter out of public school because her grades suffered after missing so much time after surgery. She also testified that the public school was not willing to accommodate Claimant's difficulties, including getting to class on time. She has encouraged Claimant to exercise, and by her account, Claimant really tries. However, she is about ninety pounds overweight and often

complains of leg and back pain when exercising.  Plaintiff stated that the Claimant's leg discrepancy has improved somewhat since her surgery.  (R. 55-60).

Mrs. Groover, the Claimant's grandmother, also testified.  She lives with the Plaintiff and the Claimant.  She does not work so she is home all of the time with the Claimant.  By her account, Claimant would come home from public school crying and complaining about her leg hurting.  Mrs. Groover indicated that she gives Claimant children's Tylenol unless other medication has been prescribed.  She indicated that she has attempted to increase Claimant's activity by playing volleyball with her, but the Claimant cannot play because her leg hurts and she falls easily.  She also encourages Claimant to work in the yard or garden with her.  While Claimant is able to do a little raking, she has to sit down for awhile after her legs start to hurt.  She sometimes takes Claimant shopping or to the movies, but they do not walk much when they are out.  (R. 55-64).

Also before the ALJ were medical records outlining the Claimant's medical history and school records documenting Claimant's grades and special education needs.  These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By his decision of March 13, 2006, the ALJ found that while the Claimant has severe impairments related to minimal dextroscoliosis of the mid-thoracic spine with very minimal levoscoliosis at the thoracolumbar spine, left lower extremity shorter than right status post right distal femur and proximal tibia screw epiphysiodesis, and obesity, she did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the criteria of a listed impairment.  Upon this finding, the ALJ concluded that the

Claimant was not disabled. (R. 18-27). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, a claimant must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906. Under the applicable regulations, the Commissioner employs a three-step evaluation process. First, he determines whether the claimant is engaged in substantial gainful activity. If not, the next determination is whether the claimant has a severe impairment or combination of impairments. If so, the Commissioner must then determine whether the impairment(s) meets, medically equals, or functionally equals the listing, and otherwise satisfies the duration requirement. Where the claimant fails to satisfy any of the criteria, she will be found not disabled. Where each of these requirements is satisfied, the claimant will be found disabled. 20 C.F.R. §§ 416.924 - 416.926a; *Wilson v. Apfel*, 179 F.3d 1276, 1277-78 n.1 (11th Cir. 1999).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises one issue on this appeal. By Plaintiff's argument, the ALJ erred by finding that the Claimant's impairments did not meet or equal the Listing at § 101.02 because he utilized the wrong standard in determining that the Claimant had "less than marked" limitation in movement. According to Plaintiff, the ALJ should have considered whether Claimant's deformity resulted in an inability to ambulate effectively as that term is utilized in the regulations, i.e., when viewed in the light of a child Claimant's age. Under that standard, Plaintiff contends that Claimant meets the listing because she is unable to carry out age appropriate school activities, she cannot stand long enough to perform in the school choir, and she was constantly late for class because she could not get to each period on time. In short, Plaintiff contends that the ALJ's listing determination is not supported by substantial evidence. Plaintiff also faults the ALJ for according great weight to the opinions of nonexamining doctors who reviewed the record nearly three years before Claimant's hearing, two years before Claimant's surgery, and prior to Claimant gaining nearly 100 pounds due to inactivity. In Plaintiff's view, the lay witness testimony and the medical evidence supports the finding that Claimant meets a listing, and she urges the court to reverse the Commissioner's decision. (Doc. 19 at 6-9).

The Commissioner counters that substantial evidence supports the ALJ's finding that Claimant's impairments do not meet or equal any listed impairment, including that at Listing 101.02. In support thereof, he points to Plaintiff's disability report in August 2002, medical records from May and August 2002, the opinions of the reviewing state agency doctors in 2003, and treatment notes dated from 2003 to 2006. The Commissioner also contends that

7

Plaintiff has failed to meet her burden of demonstrating that Claimant's impairments meet or equal Listing 100.02. He does not address Plaintiff's argument that the ALJ applied the wrong standard in determining such, particularly when addressing whether the Claimant could ambulate effectively. (Doc. 20 at 4-9).

The listing of impairments in the Social Security Regulations identifies impairments that are considered severe enough to prevent a person from engaging in gainful activity, and for children, it describes impairments that cause marked and severe functional limitations.[4] 20 C.F.R. § 416.925(a); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To meet a listing, a claimant must present specific findings that meet the various tests listed under the applicable listing. *Bell*, 796 F.2d at 1353; 20 C.F.R. § 416.925. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To equal a listing, the medical findings must show an impairment at least equal in severity and duration to the criteria set out in a listed impairment. 20 C.F.R. § 416.926(a). To functionally equal a Listing, a child claimant must have marked limitations in two domains or an extreme limitation in one domain.[5] *Id.* § 416.926a(d). By meeting a listed

---

[4] Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b). Part B contains additional medical criteria that apply only to the evaluation of impairments of persons under age 18. *See* 20 C.F.R. § 416.925(b).

[5] The regulations require consideration of six domains, which are broad areas of functioning intended to capture all of what a child can and cannot do. 20 C.F.R. § 416.926a(b)(1). A marked limitation is defined as a limitation that interferes seriously with [the] ability to independently initiate, sustain, or complete activities, and is more than moderate. *See* 20 C.F.R. § 416.926a(e)(2)(I). An extreme limitation is reserved for the worst

impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of her age, education, or work experience. 20 C.F.R. § 416.924. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the claimant to prove that she is disabled. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991); *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987).

Here, Plaintiff contends that Claimant meets or equals the listing at 101.02. This listing provide, in pertinent part:

> Major dysfunction of a joint(s) (due to any cause): characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A.  Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 101.02. An inability to ambulate effectively means:

> an extreme limitation of the ability to walk: i.e., an impairment that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 101.00J) to permit

---

limitations and is defined as a limitation that interferes very seriously with [the] ability to independently initiate, sustain, or complete activities, but does not necessarily mean a total lack or loss of ability to function. *Id.* § 416.926a(e)(3)(I).

9

>   independent ambulation without the use of a hand-held assistive
>   device(s) that limits the functioning of both upper extremities.

*Id.* at 101.00(B)(2)(b)(1). For an older child to be able to ambulate effectively, she must be capable of (1) sustaining a reasonable walking pace over a sufficient distance to be able to carry out age-appropriate activities, (2) traveling to and from school without extraordinary assistance, or (3) walking a block at a reasonable pace on rough or uneven surfaces. Examples of ineffective ambulation for an older child include, but are not limited to, the inability to (1) walk without the use of a walker, two crutches or two canes; (2) walk a block at a reasonable pace on rough or uneven surfaces, (3) use standard public transportation, (4) carry out age appropriate school activities independently, and (5) climb a few steps at a reasonable pace with the use of a single hand rail. *Id.* at 101.00(B)(2)(b)(1), (3).

   The ALJ specifically considered Claimant's impairments under Listing 101.00. (R. 20). He concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. The ALJ specifically noted that the medical evidence did not document listing-level severity and no acceptable medical source had mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. The ALJ also referenced Plaintiff's claim that Claimant's impairments met Listing 101.01, however, he again relied on the medical evidence in rejecting this contention, as well the fact that the Claimant "had some limitation in ambulation, but not to the extent required by the listings." *See id*. The ALJ acknowledged the Claimant's limitations in walking, but concluded that her ability to ambulate did not reach that of the listing because she did not have an "extreme limitation" in the ability to walk, which is how the regulations define an inability to walk effectively. He also noted that after

her surgery, Claimant was advised only to limit her high impact activities for two to three months, and that months later, Claimant was able to walk and she was instructed to participate in regular exercise. (R. 20).

Upon independent review of the record, I am constrained to conclude that substantial evidence supports the ALJ's finding that Claimant's impairment(s) did not satisfy the requirements of listing 101.01 and the ALJ employed the correct standards in so finding. Even assuming that Claimant's conditions satisfy the medical requirements of the listing, and she does not clearly demonstrate that she does,[6] record evidence supports the ALJ's determination that Claimant does not suffer from a severe inability to ambulate effectively as required by the listing. As the ALJ notes, an inability to ambulate effectively is defined in the regulations as an "extreme" limitation in the ability to walk. *See* 20 C.F.R. § 416.926a(e)(3)(I). While Claimant undoubtedly experiences some difficulties walking, particularly during the post-surgical months, the medical evidence simply does not support an extreme limitation.[7] While the ALJ could have done a better job of discussing Plaintiff's

---

[6]Plaintiff does not point to medical evidence establishing how the medical factors set forth in Listing 101.01 are met. *Cf. Bell*, 796 f.2d at 1353 (claimant must present specific findings that meet the various tests under the applicable listing). Nor does she demonstrate that her daughter experiences limitation of motion or other abnormal motion of the affected joint(s). Notably, medical records often reported that her daughter's range of motion and strength were normal. *See* (R. 275, 277, 285).

[7]For example, in July 2002, Claimant's treating physician noted that she had mild limping. (R. 244). In August 2002, he noted that she had mild scoliosis and slight limping. (R. 242). At that time, he limited her participation in physical education to "no running - walking only, no excessive exercising." (R. 243). In January and June 2003, state agency doctors opined that Claimant's impairment(s), while severe, did not meet or equal the listings. (R. 261-72). In December 2003, an orthopedic examination revealed normal motor functioning and that Claimant could toe walk, heel walk, and tandem walk. (R. 285). In September 2004, a pre-surgical assessment at Shriners Hospital revealed excellent range in motion in the lower extremities and a flat-footed gait bilaterally with a limp. (R. 277). After

11

ability to walk as compared to other children her own age, his failure to do so simply is not fatal given the lack of evidence.  Interestingly, Plaintiff fails to point to any medical evidence in support of her argument.  Although Plaintiff challenges the ALJ's reliance on the opinions of the nonexamining doctors (that Claimant's impairments do not meet or equal a listing), her complaint is not persuasive as the opinions, while somewhat dated, are not inconsistent with the later obtained evidence of record.  *Compare* (R. 261-72) *with* (R. 274-322).  Indeed, Claimant's treating doctor opined in January 2006 that her impairments resulted only in the limitation of "no prolonged standing, running or walking."  (R. 323).  In light of the medical record, Plaintiff has not met her burden of proof and can not prevail on this claim.[8]

Plaintiff also contends in summary fashion that the ALJ erred in failing to find that Claimant's impairments did not equal Listing 101.01.  Plaintiff, however, provides no argument demonstrating that Claimant's leg, back/hip, and/or obesity result in a listing equivalence.  *See Wilkinson*, 847 F.2d at 662 (stating that the claimant must present evidence that describes how her impairment equals a listed impairment).  Because Plaintiff presented no evidence describing how Claimant's impairment(s) have such an equivalency, she has failed to meet her burden of proof and may not prevail on this claim.  *See Carnes*, 936 F.2d at 1218; *Wilkinson*, 847 F.2d at 662.

---

Claimant's surgery in March 2005, she was directed to avoid high impact activities for two to three months.  (R. 296).  In October 2005, progress notes indicated that Claimant was to continue with full activities.  (R. 302).  Thereafter, in January 2006, Claimant's treating doctor opined that Claimant should not engage in prolonged running, standing, or walking.  (R. 312).

[8]To the extent that the subjective testimony at the administrative hearing may lend support to Plaintiff's argument, the ALJ clearly did not credit the testimony and Plaintiff does not challenge such on this appeal.

12

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

> Respectfully submitted this
> 7th day of February 2008.

> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Richard A. Lazzara, United States District Judge
Counsel of Record